# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8019 | **DATE** | 9/1/2004 |
| **CASE TITLE** | United Parcel Service, Inc. v. Thomas G. Pennie | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Dismiss

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, defendant's Rule 12(b)(6) motion to dismiss (Doc. # 7) is granted. Plaintiff's complaint is hereby dismissed.

(11) [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | SEP 0 8 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 12 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| aed/lc | courtroom deputy's initials | 2004 SEP -7 PM 3:00 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED PARCEL SERVICE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03 C 8019 |
| v. | ) | |
| | ) | HONORABLE DAVID H. COAR |
| THOMAS G. PENNIE, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
SEP 08 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff United Parcel Service, Inc. ("UPS") has filed a complaint against defendant Thomas G. Pennie ("Pennie") pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.* ("the DJA"). In it, UPS requests a determination that Pennie is estopped by his wage differential settlement with UPS under § 8(d)(1) of the Illinois Workers Compensation Act, 820 ILCS 305/1, *et seq.* ("the IWCA"), from asserting any right to resume employment with UPS.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Pennie has moved to dismiss the complaint on several grounds. For the reasons set forth below, this court grants Pennie's motion to dismiss and dismisses UPS's complaint.

I.  **Standards on a Rule 12(b)(6) Motion to Dismiss**

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). In reviewing a motion to dismiss for failure to state a claim, the court accepts as true all

well-pleaded facts in the complaint and draws all reasonable inferences therefrom in favor of the plaintiff. *See Ameritech Corp. v. McCann*, 297 F.3d 582, 585 (7th Cir. 2002). A complaint should be dismissed only if there is no set of facts in support of the claim that would entitle the plaintiff to relief. *See Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997).

## II. Background[1]

UPS is an Ohio corporation with its principal place of business in Atlanta, Georgia. Pennie is an individual and a citizen of Illinois. In the complaint, UPS alleges that this court has subject matter jurisdiction on the basis of the parties' diverse citizenship and its contention that the amount in controversy exceeds $75,000.

In 2001 and 2002, Pennie asserted various claims against UPS at the Illinois Industrial Commission ("ICC"), pursuant to the IWCA. The claims were based upon alleged injuries that occurred in the course and scope of Pennie's employment with UPS. On January 30, 2002, a functional capacity evaluation ("FCE") was conducted, and a written report was generated ("FCE report"). The FCE report identified certain physical limitations and work restrictions resulting from Pennie's on-the-job injuries.

On May 3, 2003, Pennie's attorney sent a letter to UPS's insurance carrier requesting $214,375.60 based upon Pennie's wage differential claim. This request was premised upon Pennie's alleged work restrictions and his allegation that UPS did not wish to accommodate those restrictions. Subsequently, UPS assented to a wage differential settlement with Pennie pursuant to section 8(d)(1) of the IWCA. The settlement agreement provided for Pennie to

---

[1] These alleged facts are taken from the complaint and assumed to be true only for purposes of defendant's motion to dismiss.

receive an immediate cash payment of $85,000 and periodic payments of $3,300 per year for ten years (totaling $112,314 in payments to Pennie). The agreement also stated that the settlement "includes all claims for benefits past, present, and future under Section 8(d)(1)" of the IWCA. (Cmplt., Exh. D). On or about May 15, 2003, the ICC approved the settlement agreement, and UPS subsequently paid the full settlement amount to Pennie.

The same month, Pennie "demanded" reinstatement to his prior position with UPS, asserting that he was under no disability or restriction and was capable of holding the position. (Cmplt., ¶ 11). Approximately six months later, in November 2003, UPS filed the instant action, seeking a declaratory judgment under the DJA. Specifically, UPS contends that Pennie's alleged acquiescence in UPS's wish not to accommodate his work restrictions (through his request for a settlement), his assertion of a wage differential claim under section 8(d)(1) of the IWCA, and his acceptance of $112,000 in satisfaction and settlement of his claim estop him from asserting any right to resume employment with UPS, and, particularly, in either his former position or any job whose demands exceed the restrictions identified in the FCE report. Along these lines, UPS seeks a determination and adjudication of the rights and obligations of the parties *vis a vis* the section 8(d)(1) settlement agreement.

Pennie bases his Rule 12(b)(6) motion to dismiss upon several arguments. He contends that dismissal is appropriate because: (1) UPS has failed to adequately allege an actual case in controversy, injury in fact, or legally recognized interest; (2) UPS has failed to adequately allege the necessary elements of judicial estoppel; and (3) UPS's claim is not ripe.

### III. Analysis

The DJA provides that, in "a case of actual controversy," federal courts "may declare

rights and other legal relationships of any interested parties . . . whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The purpose of the DJA is "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit, after damage had accrued." *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994) (internal quotations and citations omitted).

"Declaratory judgment actions serve an important role in our legal system insofar as they permit prompt settlement of actual controversies and establish the legal rights and obligations that will govern the parties' relationship in the future." *Hyatt Intl Corp. v. Coco*, 302 F.3d 707, 711 (7th Cir. 2002). Critically, the requirement of an "actual controversy" is contained within the text of the DJA, itself, and it is jurisdictional. *See* 28 U.S.C. § 2201(a); *Trippe Mfg. Co. v. American Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995).[2]

Defendant's motion to dismiss and supporting memoranda are jumbled, confusing, and largely devoid of meritorious argument. However, defendant correctly contends (albeit rather circuitously) that plaintiff has failed to allege the existence of an "actual controversy," as required by the DJA. *See* 28 U.S.C. § 2201(a). For this reason, UPS's complaint shall be dismissed.

An actual controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient

---

[2] This statutory requirement is related to the constitutional limitation on the exercise of judicial power to "cases" and "controversies." *See* U.S. Const. art. III, § 2. In essence, the DJA expressly incorporates this constitutional requirement. Or, stated another way, the statutory requirement has "constitutional dimensions." *Trippe*, 46 F.3d at 627 (internal quotations and citation omitted).

immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (internal quotations and citations omitted). Here, UPS premises its entitlement to injunctive relief upon Pennie's May 2003 "demand" for reinstatement to his former position at the company (and seeks a determination that he is estopped from doing so). *See* Cmplt, ¶ 11; Resp. Br., p. 2. UPS contends that it meets the "actual controversy" requirement by virtue of the fact that, with this suit, it "seeks to preempt a second legal proceeding where Pennie asserts that he no longer has the very disability for which UPS paid him $112,000." (Resp. Br., p. 2).

As the Seventh Circuit has observed, "[e]arly resolution of a threat of litigation, in a friendly forum, is no doubt of value to a potential defendant, but the statute requires an 'actual' controversy." *Coco*, 302 F.3d at 711-12. In that vein, the Seventh Circuit has made clear that, *"the threat of suit, however immediate, is not itself sufficient for the invocation of the federal power to issue a declaratory judgment*: as other courts have noted, the Declaratory Judgment Act 'is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse.'" *Coco*, 302 F.3d at 712 (citation omitted) (emphasis added).

Here, plaintiff has not even alleged an actual threat of a lawsuit, but rather merely suggested the possibility thereof, based upon defendant's May 2003 "demand" to be reinstated. It is clear from plaintiff's allegations in the complaint and its argument in its response brief that, as of the time it filed the complaint, the threat of litigation was not so "concrete" that plaintiff "legitimately needed a declaration of its rights and other legal relations in order" to govern its future conduct. *Cf. Coco*, 302 F.3d at 712. *See also Trippe*, 46 F.3d at 627 (establishing that only the actions of the declaratory defendant known to the declaratory plaintiff as of the

commencement of the action are relevant to determination of whether threat exists); *accord Coco*, 302 F.3d at 712. UPS's bare speculation concerning the possibility that Pennie may, sometime in the future, bring a lawsuit against it (which is all that UPS offers in this regard) is not sufficient to invoke this court's power to grant a declaratory judgment. Likewise, the wholly abstract and inconsequential matter of whether Pennie's May 2003 "demand" for reinstatement was proper in light of the settlement agreement does not rise to the level of an "actual controversy." In sum, there is no substantial controversy of sufficient immediacy and reality to warrant the granting of a declaratory judgment. Because no "actual controversy" exists, UPS's complaint must be dismissed.

Even if there were an "actual controversy," dismissal would be appropriate because the DJA does not authorize a party to seek a determination of its adversary's rights and obligations and potential damages, as UPS essentially attempts to do here. As noted above, the purpose of the DJA is "*to avoid accrual of avoidable damages to one not certain of his rights* and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit, after damage had accrued." *Nucor*, 28 F.3d at 577 (internal quotations and citations omitted) (emphasis added). As UPS has presented the underlying facts in this case, it is Pennie who is violating the terms of the settlement agreement, and UPS seeks a determination to that effect. Based on its own representations in its complaint and in its response to Pennie's motion to dismiss, it is clear that UPS is not seeking to avoid the accrual of its own damages. Rather, by UPS's allegations, it is Pennie who is accruing damages by seeking reinstatement, which UPS contends is precluded by the settlement agreement. Thus, UPS's action is not consistent with the purposes of the DJA, and dismissal on this basis would be appropriate. *See, e.g., Asch v. Teller,*

*Levit & Silvertrust, P.C.*, No. 00 C 3290, 2003 U.S. Dist. LEXIS 16747, at *20-21 (N.D. Ill. Sept. 26, 2003) (granting summary judgment on claim under DJA on the grounds that the plaintiffs did not seek a declaratory judgment that would "clarify their rights and obligations in order to avoid accruing avoidable damages" but instead sought one "that would clarify defendant's duties"); *Int'l Paper Co. v. Andoscoggin Energy LLC*, No. 0 C 6215, 2003 U.S. Dist. LEXIS 10563, at *8-9 (N.D. Ill. June 20, 2003) (concluding that party could not maintain action under DJA to define the rights and obligations of its adversary so as to limit the adversary's accrual of damages; "a declaratory judgment suit allows a party to ask the court if it can do something without incurring liability[; not] to ask if an adversary can do something without incurring liability").

Finally, even if this court did not dismiss the case on either or both the above grounds, it would nonetheless exercise its discretion to decline to entertain this case. *See* 28 U.S.C. § 2201 (providing in pertinent part that federal courts "*may* declare rights and other legal relationships of any interested parties") (emphasis added); *North Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642, 647 (7th Cir. 1998) ("district courts have wide discretion to decline to hear [DJA] actions"); *Trippe*, 46 F.3d at 627 ("even where a case presents an actual controversy, a court may properly refuse to grant declaratory relief for prudential reasons"); *Nucor*, 28 F.3d at 577 ("[t]he decision of the district court to grant declaratory relief is discretionary") (citations omitted). "A suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed . . . ." *Nucor*, 28 F.3d at 577-78 (internal quotations and citations omitted). *See also Salomon*, 152 F.3d at 647 ("district courts should decline to hear declaratory judgment actions that have been filed in an attempt to manipulate the judicial process"). It

appears to this court that wresting the choice of forum from the natural plaintiff was UPS's sole aim here.[3] For this additional and independent reason, even if there existed an actual controversy over which this court could properly choose to exercise its jurisdiction, it would decline to do so.

## IV. Conclusion

Based on the foregoing, defendant's Rule 12(b)(6) motion to dismiss is granted, and plaintiff's complaint shall be dismissed.

Enter:

**David H. Coar**
**United States District Judge**

**Dated: September 1, 2004**

---

[3] Moreover, prudential considerations dictate that a dispute concerning the meaning and implications of the underlying settlement agreement, particularly insofar as it depends upon the proper reading of section 8(d)(1) of the IWCA, would more appropriately be handled at the state level.